UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    JANNETTE L. TURNER                      CASE NO. 04-66972

                        Debtor                Chapter 7
--------------------------------------------------------
APPEARANCES:

BODOW LAW FIRM, PLLC                    THEODORE L. ARAUJO, ESQ.
Attorneys for Debtor                         Of Counsel
1925 Park Avenue
Syracuse, NY 13208

STEWART L. WEISMAN, ESQ.
Attorney for Today's Rentals Inc.
Box 598
Shadow Rock
Manlius, NY 13104-0598

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

      Under consideration by the Court is a motion filed by Jannette L. Turner ("Debtor") on November 19, 2004, pursuant to § 362(h) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Code").[1] Debtor requests $100,000 in actual damages for emotional distress and $1,000,000 in punitive damages. On December 18, 2004, a response was filed on behalf of Today's Rentals, Inc. ("Today's Rentals"), as well as Matt Ide, Kevin Smith, Robert Campbell

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), was signed into law on April 20, 2005, and made applicable to cases filed after October 16, 2005. For purposes of this decision "Code" refers to the law in effect at the time the Debtor's case was filed unless otherwise indicated.

and Christopher Merino (collectively, the "Respondents.")

The motion was heard on January 18, 2005, at the Court's regular motion term in Syracuse, New York. Following oral argument, the Court scheduled the matter for an evidentiary hearing to be held on March 23, 2005. The hearing was adjourned on several occasions on consent of the parties and ultimately was held on August 17, 2005. In lieu of closing arguments, the Court provided the parties with an opportunity to file memoranda of law. The matter was originally submitted for decision on September 23, 2005. This was extended to October 21, 2005, at the request of the parties. *See* Docket Nos. 41.

### JURISDICTIONAL STATEMENT

This Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (2)(O).

### FACTS

The Debtor filed a voluntary petition ("Petition") pursuant to chapter 13 of the Code on October 4, 2004, along with her plan. An Order confirming the Debtor's plan was signed on March 15, 2005, and on April 19, 2005, the case was converted to chapter 7 by way of a Notice of Conversion filed by the Debtor pursuant to Code § 1307(a) in which she indicated that she was unable to comply with the confirmed plan due to "lower than anticipated income." (Docket No. 24).

The Debtor testified that she filed her Petition in response to the repossession of her 2000 Pontiac Grand Am by AmeriCU Credit Union, which held a security interest in the vehicle. Debtor acknowledged on cross-examination that the vehicle was not listed as having been repossessed prepetition in her Statement of Financial Affairs. Indeed, under the heading of "Repossessions, foreclosures and returns," it is checked "None" in response to a request that the Debtor "[l]ist all property that has been repossessed by a creditor . . . within one year immediately preceding the commencement of the case." Debtor acknowledged that the entry was in error. She further testified that the car was returned to her approximately two weeks after she filed the Petition. According to the case docket, on July 7, 2005, the Court signed an Order granting relief from the automatic stay to AmeriCU Credit Union pursuant to Code § 362(d) to allow it to again repossess the vehicle.

Today's Rentals was not listed as an unsecured creditor in the Debtor's schedules. However, it was listed as having a lease/executory contract with the Debtor for a television set. *See* Schedule G, attached to the Petition. Debtor's plan at ¶ 8 indicates the Debtor's intent to "affirm" the executory contract with Today's Rentals for the television set. *See* Debtor's Exhibit B.

The "executory contract" referenced in the Debtor's schedules was entered into on September 28, 2004, approximately one week prior to the Debtor's filing of the Petition. The agreement signed by the Debtor provided for weekly payments of $22.10. *See* Today's Rentals' Exhibit 2. At that time, the Debtor had selected a used 32" large screen television set. According to the Debtor, she determined that she could not afford a larger television set. Her main concern was that it be larger than the four other television sets she owned and that it have an A-V jack to

4

accommodate her children's "Play Station." The Debtor testified that only one of the four television sets she owned had an A-V jack. The new television set was to be used by herself and her two children. In entering into the agreement, the Debtor prepaid $70, which she testified allowed her two weeks' rental of the television set for free.

The Debtor testified that on Monday, October 11, 2004, which was a holiday, she received a call from someone at Today's Rentals indicating that they had received a new shipment of television sets and were willing to switch her current television set for one of the newer models. According to the Debtor, approximately two hours later two individuals came and disconnected her current television set and removed it from her upstairs apartment. Debtor testified that she was asked to sign a document, which she did not read and which she assumed was to acknowledge the exchange of the television sets. However, the two individuals did not return with a new television set and, according to the Debtor, one of them told her that "You can't file bankruptcy against us. This is our property. You are not going to get away with it. We know your kind of people." The Debtor testified that she was very upset at the time and did not understand what had happened. She cried and experienced some anxiety. She also testified that she had second thoughts about having filed her bankruptcy petition and the entire incident had raised doubts in her mind concerning the assurances she had received from her attorney that she would be able to retain the television set and continue making the payments on it.

On cross-examination, the Debtor acknowledged that she suffers from depression and anxiety and over the past five years has sought treatment for those conditions. She testified that on the day of the hearing she was on 30 mg of Paxil and also takes Xanax as needed up to twice a day. She also suffers from migraines. According to the Debtor, the incident exacerbated her

physical symptoms.²

The Debtor's son testified that he had seen the two men take the television set out of their apartment. He also observed his mother crying after they left and did not return with a new television set. The Debtor's 13 year old daughter also testified that her mother had told her and her brother that they were to get a new television set and afterwards when none was delivered to replace the one removed from the apartment, she had attempted to get her mother to stop crying.

It was the Debtor's testimony that sometime within the next couple of days following the removal of the television set, she revisited the Today's Rentals' store to get her money back since she had paid in advance for two weeks' rental of the television set. She testified that at that time she did not want the television back and did not want to deal with Today's Rentals any more. She indicated that there were several customers in the store when she came in and she experienced embarrassment in having to ask for her money back under the circumstances. According to the Debtor, she received approximately $30 of the $70 she had paid.

Matthew Ide ("Ide") testified that he first met the Debtor on September 28, 2004, when she came into the showroom of Today's Rentals. According to Ide, she initially picked out a 51" high definition television set. However, after processing the form he had had her complete, which included her home telephone, length of residency, current income and references (Today's Rentals' Exhibit 1), he recommended that she take a smaller television set, and that he would be willing to rent her a larger model after a couple of months of payments. He explained that his

---

² At the hearing, the Debtor's counsel indicated that he would stipulate to the fact that the Debtor was an "eggshell plaintiff." Under this rule of causation in tort law, a defendant takes a plaintiff as he/she finds him/her and is liable for whatever aggravations to a pre-existing condition result from a defendant's conduct. *See Woodhams v. Moore*, 840 F.Supp. 517, 519-20 (S.D. Ohio 1994) (citations omitted).

6

decision was based not on the Debtor's credit but on the fact that she did not have a home telephone, instead she had two cell phones, and he was unable to speak to her landlord or one of her other references. He did speak to two of her references who verified certain information. According to Ide, the process took approximately forty minutes. The television set was delivered to the Debtor's apartment that evening after hours by Paul and Kevin Smith.

Ide testified that, as was the company's practice, he called her the next day or so to make sure that she was happy with the television set. He testified that she again inquired about a new and larger television set, and he again told her she would need to make payments for a couple of months before they would consider renting her a larger television set. He acknowledged that he did tell her he could get her a new 32" television set when one arrived at the store since the one they delivered to her was used.

According to Ide, at some point the Debtor called Today's Rentals and spoke with Robert Campbell ("Campbell"), one of the owners. Ide testified that because she was screaming over the telephone, Campbell had put her on speaker phone for Ide to hear. It was Ide's testimony that in that conversation, the Debtor demanded that she be given a new television set or they could come and "pick up the raggedy ass TV" or she would put it out on the lawn. According to Ide, Campbell told her that he would have his employees pick up the television set.

Ide also testified that at some point after the television set had been picked up, the Debtor had called the store and had spoken to him. She told him that she had filed bankruptcy with the intent that she continue making the payments to Today's Rentals. According to Ide, the Debtor was upset and wanted a refund. According to the Debtor, Ide made a comment concerning the types of individuals that filed bankruptcy and told her that she should speak with their attorney.

According to the Debtor, she was left with the impression that he then had her speak to someone whom she initially believed was an attorney. The Debtor acknowledged requesting a refund of the monies she had prepaid for the rental of the television set. It was Ide's testimony that he told her to come into the store to get a refund. He also testified that he ultimately hung up on her because of her alleged profanity.

Campbell acknowledged that he had spoken with the Debtor a few days before she came into the store to get a refund. He testified that he had spoken with her about getting a larger television set when one was delivered to the store. According to Campbell, when she returned to the store for the refund she was irate and, in the presence of other customers, indicated that she would not leave until she got her "$70 back." He also testified that she raised her voice, stating that "You are the most unprofessional "f"ing people I have ever dealt with." This was corroborated by Ide, who was also in the store at the time that the Debtor came in to get her refund. The Debtor denied using any profanity.

On cross-examination, Ide acknowledged that he was aware of the fact that the Debtor had filed a bankruptcy petition. He testified that he had received notice of the filing but had not paid any attention to the terms of the Plan and the fact that the Debtor intended to continue making the payments on the television set. It was Ide's testimony that his main concern was that the television set not be left out on the Debtor's lawn.

According to Paul Smith, an employee of Today's Rentals, he first met the Debtor on September 28, 2004, when he delivered the television set to her apartment. He again saw her late on the morning of October 11, 2004, after receiving a call from the store requesting that he recover the television set from the Debtor's apartment because she was threatening to put the

television set out on the front lawn. He acknowledged that he, along with Kevin Smith, disconnected the television set and removed it from the Debtor's apartment. He testified that the Debtor had requested a refund, and he had told her to call the store. He denied having her sign any document. He also denied taunting or "belittling" the Debtor because of her having filed for bankruptcy shortly after renting the television set.

## **DISCUSSION**

Code § 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Thus, in order for sanctions to be imposed pursuant to Code § 362(h), the Debtor must establish (1) that the action taken violated the automatic stay; (2) the violation was willful; and (3) the debtor was injured as a result of the violation. *In re Clayton*, 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998).

As an initial matter, the Court must determine whether the automatic stay protects a debtor that is leasing an item of personal property that is "repossessed" postpetition by the lessor. Code § 363(e), applicable to a chapter 13 debtor pursuant to Code § 1303, provides that a lessor of personal property is entitled to adequate protection of its interest in the leased property in the form of rental payments upon request; however, the lessor is not entitled to relief from the automatic stay to retake the property based on a lack of adequate protection. *In re D.M. Kaye & Sons Transport, Inc.*, 259 B.R. 114, 121-22 n.12 (Bankr. D.S.C. 2001). The obvious inference is that the Debtor's interest in the television set, although not owned by her, was subject to the protection

of the automatic stay.[3] In this case, the Debtor actually had made a payment of rent in advance, allowing her the use of the television set for a couple of weeks before her weekly payment of $22.10 was due. In addition, the Debtor's plan indicated an intent to "affirm" the rental agreement with Today's Rentals. Based on the these facts, clearly the automatic stay was in effect with respect to the television set and there was not even a basis for demanding adequate protection at the time Today's Rentals' agents removed it from the Debtor's apartment.

The issue before the Court is whether there was a willful violation of the automatic stay and whether the Debtor was injured as a result of such violation. In this case, the actual incident which the Debtor alleges violated the automatic stay was the alleged ruse employed by Today's Rentals' agents in "repossessing" the television set, which the Debtor had in her possession on October 11, 2004. The Court of Appeals for the Second Circuit in *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2d Cir. 1990) found that a creditor acts willfully if it (1) has knowledge of the petition, and (2) the act which violates the stay was intentional. *Id.* at 1105. As the Court of Appeals noted, "[t]his standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially

---

[3] Although not applicable to the Debtor's case as it was filed in 2004, BAPCPA § 362(h)(1)(A) provides additional support for the conclusion that the automatic stay applies to personal property leased by a debtor. BAPCPA § 362(h)(1)(A) refers to the termination of the automatic stay as to personal property which is the subject of an unexpired lease in the situation where the debtor is an individual and fails to comply with BAPCPA § 521(a)(2). BAPCPA § 362(h)(1)(A) also makes reference to BAPCPA § 365(p), which provides that in a chapter 13 case, if the debtor was a "lessee with respect to personal property and the lease is not assumed in the plan confirmed by the court," the lease is deemed rejected and the automatic stay pursuant to Code § 362 is "automatically terminated with respect to the property subject to the lease," as of the conclusion of the hearing on confirmation. 11 U.S.C. § 365(p)(3).

unnecessary legal expenses in prosecuting stay violations." *Id.*

In this case, Ide acknowledged that he was aware of the Debtor's bankruptcy case before the television set was removed from her apartment. In addition, there is no dispute that the act of removing the television set from the Debtor's apartment was intentional. Based on the testimony presented, the Court finds the Debtor's description of what occurred on October 11, 2004, as being more credible than that presented on behalf of Today's Rentals.

There appears to be no dispute that both Campbell and Ide were aware of the Debtor's interest in having the used television set she was renting replaced with a newer set. They assured her that they would call her when they received a shipment of new television sets. Accordingly, it was reasonable for the Debtor to have agreed to the "repossession" of the used television set with the expectation that there would be an exchange for a new television set. The Debtor's children corroborated her testimony that they were expecting the used television set to be replaced with a new set once the latter had been disconnected and removed from the apartment. The fact that the Debtor did not object to the removal of the television set from her apartment is of no consequence given the Court's conclusion that it was the result of the deception and trickery of Today's Rentals. Thus, the Debtor has met her burden of establishing a willful violation of the automatic stay by Today's Rentals, through the actions of its employees. Accordingly, the Court must consider the issue of actual damages based on the Second Circuit's holding in *Crysen/Montenay* that "[a]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." *Id.* Furthermore, "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." *Id.*

11

The Debtor has not established any monetary damages as a result of the willful violation of the automatic stay. In fact, she received a refund in the amount of approximately $30 of the $70 payment she initially paid in advance for rental of the television set. The Debtor did testify that once she realized that Today's Rentals did not intend to replace the television set they removed from her apartment with a new model, as promised, she experienced anxiety and embarrassment for which she cried. This was corroborated by her children, who testified that they tried to calm their mother. Debtor acknowledged that she had not had to seek medical attention, but she also testified that she had found it necessary to take medication previously prescribed for her depression and anxiety, conditions for which she had been receiving treatment for approximately five years.

Some courts have declined to award damages in instances of minor aggravation or inconvenience arising from an entity's willful violation of the automatic stay, *see, e.g., McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP 1995); *In re Crispell*, 73 B.R. 375, 380 (Bankr. E.D.Mo. 1987). Others have held that the definition of "actual damages" includes those for purely emotional injury, even in the absence of any financial loss. *See In re Ficarra*, Case No. 00-62714, slip op. at 9 (Bankr. N.D.N.Y. April 17, 2002) (citations omitted). In *Ficarra*, this Court acknowledged the holding of the Court of Appeals for the Seventh Circuit in *Aiello v. Providian Fin. Corp.*, 257 B.R. 245 (N.D. Ill. 2000), *aff'd,*, 239 F.3d 876, 881 (7th Cir. 2001), a case cited by Today's Rentals' counsel, which indicated "only a debtor who first demonstrates financial injury may 'piggyback' claims for incidental emotional distress." *Ficarra* at 9. However, this Court declined to follow *Aiello,* concluding that "emotional distress is an injury itself, and, therefore, may be the basis for an award of actual damages, even where no

financial injury has been demonstrated." *Id.* This Court in *Ficarra*, however, also found that the district court in *Aiello* had provided a "logical analysis for courts to use in evaluating emotional distress claims once a court has determined that consideration of emotional distress is proper." *Id.* at 11 n.7. Under this analysis, the district court in *Aiello* found that

> emotional distress must be more than "fleeting, inconsequential and medically insignificant" to be compensable. Surely, this requisite severity can be established by medical or other supporting evidence. Where no medical evidence exists, however, emotional distress can be reasonably presumed where the stay violation is sufficiently offensive . . . . [S]uch a presumption is justified when, for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantially adverse action results from the stay violation.

*Aiello*, 257 B.R. at 250-51 (quoting *Crispell*, 73 B.R. at 380).

In this case, as noted previously, there was no medical evidence offered by the Debtor regarding the exacerbation of her symptoms of anxiety and depression. According to the Debtor, she had received assurances from her attorney that she could retain possession of the television set and continue making the payments on it. Indeed, according to the terms of her chapter 13 plan, filed along with her Petition, she intended to "affirm" the lease/executory contract with Today's Rentals. The Court finds the Debtor's testimony, in the context of the repossession of the television set, to be credible to the extent that she testified that they were repossessing the television set because of her having filed bankruptcy within two weeks of its rental. The Court finds that those actions constituted a personal attack on the Debtor for which damages for the resultant emotional distress are warranted, notwithstanding the lack of any medical testimony. Accordingly, the Court concludes that the Debtor shall be awarded $750 for actual damages

resulting from her emotional distress.[4]

The Court further concludes that, based on the finding of a willful violation of the automatic stay, the Debtor is entitled to reasonable attorney's fees. Because no time records have yet been filed with the Court, a determination regarding the amount of attorney's fees to be awarded is not possible at this time. Time records shall be filed with the Court and copied to Today's Rentals' attorney no later than fifteen (15) days from the date of this Decision, in order for the necessary determinations to be made.

The Debtor has also requested that the Court award punitive damages. In order to make such an award, the Court must find maliciousness or bad faith on the part of the offending creditor. *Crysen/Montenay,* 902 F.2d at 1105. An award of punitive damages is intended "'to punish a person for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *In re Klein*, 226 B.R. 542, 547 (Bankr. D.N.J. 1998), quoting RESTATEMENT (SECOND) OF TORTS § 908 (1979). Of import in considering whether to award punitive damages is the gravity and duration of the offense and the extent of the harm caused by the creditor's actions. *Klein*, 226 B.R. at 547. In this case, the Court concludes that the actions taken by Today's Rentals do not reach the level of "maliciousness" or "bad faith," so as to warrant an award of punitive damages. Unlike instances in which a debtor establishes a pattern of repeated violations of the automatic stay over time, this appears to have been an isolated

---

[4] In *Ficarra* the Court awarded $1,000 for the emotional distress caused by repeated threats of repossession of the debtors' vehicle if they failed to pay the debt of $1,470.68 in full. *See Ficarra*, slip op. at 5. The vehicle was the debtor's sole means of transportation, and the testimony evidenced a reasonable basis for concern and anxiety about the possible loss of the vehicle that warranted that award. The Court is of the opinion that the anxiety experienced by the Debtor concerning the loss of a television set, particularly when the Debtor possessed four other television sets, does not warrant an award at the level granted in *Ficarra.*

14

incident. The Debtor testified that she had not wanted the television set returned. She received a refund, and there was nothing to prevent the Debtor from renting a television set elsewhere. Indeed, the Debtor testified that she had previously rented from another store located in close proximity to Today's Rentals.

Based on the foregoing, it is hereby

ORDERED that the Debtor's request for actual damages is granted in the amount of $750; and it is further

ORDERED that the Debtor's request for costs and attorney's fees[5] is granted in an amount to be determined by the Court upon receipt of pertinent time records, which shall be filed with the Court and sent to Today's Rentals' counsel no later than fifteen (15) days from the date of this Decision; and it is further

ORDERED that the Debtor's request for punitive damages in the amount of $1,000,000 is denied.

Dated at Utica, New York

this 3rd day of April 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge

---

[5] Debtor's counsel has argued in its motion that it is entitled to a one-third contingency fee of the recovery for awards based upon Code § 362 violations. On January 10, 2005, the chapter 13 trustee filed an letter objecting to that request by Debtor's attorney. The trustee asserted that Local Rule 2016(2) is not relevant to a Code § 362(h) motion, "and implies only that attorney compensation that exceeds one-third of the debtor's total plan payments may be *un*reasonable." (emphasis in original). *See* Docket No. 16. The Court concludes that the better approach is to make an award based on what is "reasonable" under the circumstances, including the egregiousness of the violation and the steps taken by counsel to remedy the situation before filing the motion with the Court. *See In re Putnam*, 167 B.R. 737, 741 n.1 (Bankr. D.N.H. 1994).