Theodore L. Araujo, Esq.
Bodow Law Firm, PLLC
1925 Park Street
Syracuse, New York 13208

Stewart Weisman, Esq.
8060 Shadow Rock
Box 598
Manlius, NY 13104-0598

Re:    JANNETTE TURNER
       CASE NO. 04-66972

## LETTER-DECISION AND ORDER

Before this Court is an Application for Attorney's Fees ("Fee Application") filed by, the

Bodow Law Firm, PLLC, Theodore Lyons Araujo, Esq. ("Araujo") of counsel, seeking total fees in

the sum of $9,200 for services rendered to Jannette Turner (the "Debtor") in connection with a

contested matter instituted by the Debtor pursuant to § 362(h) of the Bankruptcy Code, 11 U.S.C.

§§ 101-1330 (the "Code") seeking $100,000 in actual damages and $1,000,000 in punitive damages

against Today's Rentals Inc. ("Today's Rentals"), Matt Ide, Kevin Smith, Robert Campbell and

Christopher Merino, individually and as agents of Today's Rentals ("Respondents"), arising out of

their willful violation of the automatic stay imposed by Code § 362(a).[1]

An evidentiary hearing was held on the Code § 362(h) motion in this Court on August 17,

---

[1] On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of
2005 ("BAPCPA") became effective. § 362(h) of the prior Code has been renumbered with minor
modifications and appears in BAPCPA as § 362(k). The filing date of this case requires the Court
to apply Code § 362(h).

2

2005, and following the submission of memoranda of law by counsel for all parties, this Court, on

April 3, 2006, issued its Memorandum-Decision, Findings of Fact, Conclusions of Law and Order

("April 3rd Order") in which it found a willful violation of the Code § 362(a) stay, awarded the

Debtor actual damages in the sum of $750 and denied the Debtor's claim for punitive damages.  The

Court in the April 3rd Order concluded that the Debtor was also entitled to reasonable attorney's

fees; however, because no time records had been provided by the Debtor's counsel with the motion

papers, the Court concluded that it could not make an award of attorney's fees at that time. The Court

directed Debtor's counsel to file and serve time records within 15 days of the April 3rd Order.

On April 17, 2006, Debtor's counsel filed Fee Application, which contained, inter alia, the

requested time records.[2]  The Fee Application also contained the curriculum vitae of Araujo, together

with his analysis of the appropriate hourly rate for his services, as well as that of paralegals employed

by the Bodow Law Firm. In response, Respondents' counsel, Stewart Weisman, Esq.("Weisman"),

filed a Memorandum of Law opposing the Fee Application.

Araujo contends that in addition to his qualifications, he concluded after consultation with

a colleague, who is a respected bankruptcy practitioner in the Syracuse, New York area, that an

hourly rate of $250 for his services was reasonable, which he then applied to the total hours reflected

in his time records, to arrive at a total fee request of $9,200.  Weisman responds that a fee award

made in connection with a wilful violation of the stay motion cannot be viewed in a vacuum.  Citing

case law that holds that fees awarded in these types of contested matters must bear some relation to

---

[2] Debtor's counsel filed its Fee Application electronically in response to the Court's direction;
however, it then received a "Clerk's Notice of Deficient Document Filed" directing counsel to file
a Notice of Hearing or face possible denial of the Fee Application.  In accordance with the Clerk's
Notice, counsel filed a Notice of Hearing making the Fee Application returnable before the Court
at a motion term scheduled for June 6, 2006, in Syracuse, New York.

3

the actual damages suffered by a debtor so as not to encourage frivolous motion practice, Respondents' counsel also asserts that courts generally require a showing by the debtor that some effort was made to resolve the alleged stay violation before actually filing a motion, noting that in the instant case, Debtor's motion was served one day after the alleged violation.[3]   Turning to Araujo's claimed hourly rate, Weisman argues that the Court can hardly rely on the hearsay statement of another attorney who allegedly informed Araujo that $250 was a reasonable hourly rate, again noting that the attorney in question is a member of a large law firm with eleven offices and some two hundred attorneys.  Weisman suggests that a more appropriate hourly rate would be no more than $200 per hour for an attorney in a "small firm" such as the one in which Araujo is a partner.

Weisman then proceeds with an analysis of the time records provided by Araujo utilizing the "lodestar factors," contending that the Fee Application fails to establish some eight of the twelve traditional "factors."[4]  Respondents' counsel further points out that a number of the time entries bear no factual similarity to the actual events that Debtor alleged constituted the stay violation, suggesting that many of the time entries are simply "boilerplate" in nature and similar to those utilized by Araujo in drafting the original motion papers containing "glaring factual misstatements.".

On or about June 12, 2006, following oral argument on the Fee Application, Araujo asked the Court to consider a recent decision of U.S. Court of Appeals for the Second Circuit in the case

---

[3] Weisman contends that at least one of his clients was served with the Debtor's "original"stay violation motion on or about October 15, 2004, even though the Debtor's motion was not actually electronically filed until November 19, 2004.

[4] The so-called "lodestar" factors first appeared in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and are generally relied upon by federal courts in awarding professional compensation.

4

of *McDonald v. Pension Plan of the NYSA-ILA Trust Fund,et al*, 2006 U.S.App.LEXIS,13965 (2d Cir. 2006) insofar as that decision dealt with the issue of attorney's fees.  The Court agreed to consider the decision, but allowed Weisman to file a letter stating his position as to the relevance of the case to the matter, *sub judice.*[5]

In reaching its conclusion, the Court must be mindful of relevant case law interpreting the "actual damages" portion of Code § 362(h).  A plain reading of that section leads to the conclusion that a debtor's attorney's fees constitute an element of actual damages, and it has been so interpreted by other courts.  *See In re Omine*, 329 B.R. 343 (Bankr,  M.D. Fla. 2005) *aff'd*. 2006WL 319162 (M.D. Fla. 2006); *In re Peregrine Systems, Inc*., 314 B.R. 31(Bankr. D. Del. 2004) *aff'd. in part, rev'd. in part*, *and remanded in part*, 2005WL 2401955 (D. Del. 2005); and *In re Henry*, 266 B.R. 457 (Bankr. C.D. Cal. 2001). Court's have also interpreted § 362(h) as mandating an award of attorney's fees even where the court determines not to award any actual or punitive damages or to award minimal damages to the debtor, so long as those fees flow from the debtor's effort to address a stay violation.  *See In re Risner*, 317 B.R 830 (Bankr. D. Idaho 2004); *In re Skeen*, 248 B.R. 312 (Bankr. E.D. Tenn.2000); and *In re Robinson*, 228 B.R. 75 (Bankr, E.D. N.Y. 1998).  Conversely, courts, in order to discourage willful violations of the automatic stay, will not make fee awards that might, "foster a 'cottage industry' built around satellite fee litigation." *Robinson*, 228 B.R. at 85 citing *In re Putnam*, 167 B.R. 737, 741 (Bankr. D.N.H. 1994).  A significant factor courts consider in crafting an award is the efforts made by the debtor to settle the dispute without first resorting to motion practice.  *See Id.*; *In re Briskey*, 258 B.R.473 (Bankr. M.D. Ala. 2001); and *Shadduck v.*

---

[5] On June 14, 2006, the Court received correspondence from Weisman containing his analysis of *McDonald* and its relevance to the pending Fee Application.

*Rodolakis*, 221 B.R. 573 (D. Mass. 1998).  Here, Weisman contends that the Debtor's counsel instituted this contested matter one day after the stay violation by serving the motion on his clients, even though the motion was not electronically filed until approximately one month later.  He suggests that Araujo's fees should be, "greatly reduced because he did not fire a warning shot over the Respondents' bow, instead rushing into litigation unnecessarily and unreasonably increasing the attorney's fees in this case."  *See* Weisman's Memorandum of Law dated May 29, 2006, at page 3 of 9.  The Court finds this argument somewhat unpersuasive, particularly in this case where the stay violation was essentially a single event and not a continuous course of arguably inadvertent conduct, e.g., a series of post petition "dunning" letters or phone calls.  Such a requirement would place an unreasonable burden on a debtor to forewarn the offending creditor to cease and desist before debtor's counsel could reasonably file a Code § 362(h) motion.  *See Price v. Pediatric Academic Ass'n, Inc.*, 175 B.R. 219,221 (S.D. Ohio 1994), *on remand,* 179 B.R. 70 (Bankr. S.D. Ohio 1995).  As to Weisman's argument that an award of attorney's fees must bear a reasonable relation to the damages awarded, the Court notes that is but one factor that it should consider in arriving at an appropriate fee award, being ever mindful that "[a]ttorneys are not at liberty to incur large legal fees simply because those fees will be shifted to their adversaries pursuant to section 362(h)."  *Robinson*, 228 B.R. at 85.

With the above factors in mind, the Court turns to Araujo's time records which it notes, initially, suffer from the infirmity of "lumping," i.e., a number of discrete tasks attributable to a single time increment.  *See In re Worldwide Direct, Inc.,* 316 B.R. 637, 643 (Bankr. D. Del. 2004) (noting that "'[c]ourts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the

reasonableness of the individual services and their value to the debtor's estate.'" (citations omitted);

*In re Williams*, Case No. 96-60050, slip. op. at 5 (Bankr. N.D.N.Y. Sept. 26, 1996).  This onerous

practice is reflected in Araujo's time records relating to the period 10/15/04 up to and including

1/10/05 when he received a response to the Code § 362(h) motion from the Chapter 13 Trustee.[6]

In fact, it would appear that for the most part the time records during this period contain a good deal

of "boilerplate language," as suggested by Weisman, having no relevance or value to this specific

Code § 362(h) motion.  Accordingly, the Court will not compensate Araujo for these time entries,

thereby disallowing $1,350.  As to the remaining entries, the Court is concerned with those attributed

to the periods 3/22/05 through 3/25/05 - 4.5 hours-$1,125 and 10/01/05 through 10/21/05 - 16 hours-

$4,000.  During the March 2005 period, aside from the obvious "lumping" infirmity, the Court is

unable to conduct a "reasonableness" analysis given the lack of detail.  Understanding, however, that

some amount of time was devoted to discovery, the Court will approve one half of the time requested

for the aforementioned period, to include the entry for 4/01/05 as well, thereby disallowing 2.9 hours.

With regard to the October 2005 period, while the Court does not find "lumping" or detail to be as

problematic, the Court believes that, given the relatively straight forward legal analysis applied to

Code § 362(h) motions by this and other bankruptcy and appellate courts in numerous reported

decisions, as well as the lack of any novel issues presented by this contested matter, $4,000, for legal

research and drafting of a memorandum of law, is simply excessive.  Thus, the Court will adjust this

legal research and writing increment by disallowing 8 hours.[7]  Finally, the Court must consider the

---

[6] The Court notes that Debtor's case was originally filed on October 4, 2004, pursuant to Chapter 13 of the Code, but was voluntarily converted to a Chapter 7 case on April 19, 2005.

[7] The Court has considered, in making these adjustments to the Fee Application, the assertion by Araujo that he has waived any request for costs associated with the Application, and that he has

7

appropriate hourly rate to be utilized in applying the "lodestar" analysis.  Weisman asserts that the

hourly rate being applied by Araujo ($250 per hour) is excessive given the lack of any admissable

evidence to support that rate and the further contention that there is necessarily a recognized

disparity between the hourly rate charged by large law firms and that charged by solo practitioners

or small law firms.  Weisman contends that the appropriate rate applicable here is not more than

$200 per hour.  The Court, in considering this issue, has reviewed the recent decision of the Second

Circuit in *McDonald*, 2006 U.S. App. LEXIS 13965, the correspondence of Weisman dated June 12,

2006, as well as its familiarity with attorney's fees, generally in consumer bankruptcy cases, and

determines that $200 per hour was the acceptable rate at the time this contested matter was litigated.

The Court concludes that given its finding that the Respondents' did, in fact, willfully violate

the Code § 362(a) stay by retaking possession of the Debtor's rented television set post-petition by

means of "deception and trickery," the filing of the Code § 362(h) motion by the Bodow Law Firm

was justified and warranted.  The fact that the Debtor was unable to prove anything beyond nominal

actual damages for incidental emotional distress to herself resulting from the Respondents' actions

does not prohibit her from recovering reasonable attorney's fees in order to redress the wrong

occasioned by those actions.  Accordingly, the Court will award attorney's fees to the Bodow Law

Firm in the sum of $4,100 for services rendered to the Debtor in connection with this contested

matter.  The Court directs that the fee award be paid by the Respondents to the Bodow Law Firm

within sixty(60) days of the date of this Order.

---

not requested any fee in connection with pursuit of the Fee Application itself.

8

IT IS SO ORDERED

Dated at Utica, New York

this 21st day of July 2006


/s/    Hon. Stephen D. Gerling____
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge